## CLEVELAND, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY *v.* CAREY.

[No. 4,750.   Filed June 1, 1904.]

RAILROADS.—*Signals at Crossings.—Purpose.*—The object in requiring railroad companies to give signals of the approach of trains to highway crossings is not altogether to prevent a collision with the trains, but to enable travelers approaching the crossing to avoid the danger arising from being in close proximity to the track when the trains pass. *p. 278.*

SAME.—*Injury at Crossing.—Failure to Give Signals.—Proximate Cause.*—A complaint in an action for damages for injuries sustained at a railroad and highway crossing alleged that by reason of certain obstructions persons approaching the crossing were unable to see more than ten feet along the track in the direction from which the train approached without going upon the track; that plaintiff and her husband approached the crossing in an open sleigh, driving in a walk, and looked and listened for the approach of trains, and when within ten or fifteen feet of the track stopped their horse and looked and listened for trains; that on failing to see or hear any they drove on, looking and listening, when, without any signal or warning, defendant negligently pushed a train of freight cars upon the crossing in such close proximity to the horse as to frighten the horse, causing it to become unmanageable, causing the sleigh to be upset, and the injury complained of. *Held,* that the negligence of defendant in failing to give signals was the proximate cause of the injury. *pp. 276–279.*

NEGLIGENCE.—*Proximate Cause.*—The proximate cause of an injury is that which sets in motion the chain of circumstances leading up to the injury. *p. 278.*

RAILROADS.—*Signals at Crossings.*—Where, by reason of the location of the engine at the rear end of the train, signals could not be heard at a highway crossing, it was the duty of those in charge of the train to give warning of its approach in some other way. *p. 279.*

Cleveland, etc., R. Co. *v.* Carey.

RAILROADS.—*Signals at Crossings.—Ordinances.*—An ordinance prohibiting railroad companies from sounding locomotive whistles within the corporate limits of the city, containing the proviso that nothing in the ordinance should prohibit the sounding of fire alarms, or such danger signals as are necessary for the protection of life and property, was immaterial in an action against a railroad company for injuries caused by failure to give signals of the approach of a train, and no error was committed in striking the same from the evidence on motion of plaintiff. *pp. 280–282.*

NEGLIGENCE.—*Contributory.—Instruction as to Burden of Proof.*—An instruction in an action for personal injuries "that under the law as it now is, contributory negligence on the part of the plaintiff is a matter of defense, and must be proved by a fair preponderance of the evidence in the case, but such contributory negligence may be proved by witnesses introduced by the defendant or those introduced by the plaintiff, or by both" is not erroneous because the word "witnesses" was used instead of the word "evidence," especially where the jury was told in another instruction that "if you find from the evidence in this case that the plaintiff was guilty of any negligence on her part which proximately contributed to the injuries of which she complains, your verdict should be for the defendant." *pp. 282, 283.*

EVIDENCE.—*Expressions of Pain and Suffering.*—In an action for personal injuries, plaintiff's husband, testifying as a witness, was asked to state to the jury—"using her language—what exclamations of pain, if any, she had given since the date of the accident," and answered, "she says, 'my back and hip hurts me.'" *Held,* admissible as an expression of present, existing pain. *pp. 283, 284.*

From Delaware Circuit Court; *J. G. Leffler,* Judge.

Action by Sarah E. Carey against the Cleveland, Cinnati, Chicago & St Louis Railway Company. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*W. A. Thompson* and *W. H. Thompson,* for appellant.
*Mann & Ross, James Bingham* and *Jesse Long,* for appellee.

ROBINSON, J.—Appellee recovered damages for injuries received through the alleged negligence of appellant. Errors assigned: Overruling the demurrer to the amended complaint, the motion for judgment on answers to interrogatories, and the motion for a new trial.

The amended complaint avers that appellant's main and side tracks, about six feet apart, run almost due east and

west across Elm street, about fifty feet wide; that, because of certain obstructions (described) on the west side of the street, the view of both tracks was cut off, and persons on foot or in vehicles were unable to see more than ten feet westward along the track, except by going directly thereon. Appellee and her husband, in a one-horse open sleigh, approached the crossing from the south, driving in a walk. They both continued to look and listen for trains, and within ten or fifteen feet of the south track the horse was stopped, and appellee and her husband looked and listened for the purpose of ascertaining whether any train was approaching; that neither of them saw or heard any train; that they continued to look and listen, and drove upon the crossing, and, without any signal or warning whatever, appellant negligently pushed a train of freight-cars upon the crossing in such close proximity to the horse that, but for the whirling and running of the horse, the cars would have collided with the conveyance; that, on account thereof, the horse became unmanageable, and suddenly turned away from the cars, and ran eastward in front of the train, upsetting the sleigh and throwing appellee upon the track, whereby she was permanently injured; that when appellant pushed the train, consisting of an engine and several freight-cars, upon and over the crossing, it failed and neglected to give any signals or warnings by ringing the bell or sounding the whistle; that there was no person near or at the end of the train to give any warnings, and no flagman; that when appellee discovered the train it was in such close proximity to the horse and conveyance that it was impossible to escape a collision therewith by driving across the track, or either to back or turn off from the crossing, or otherwise escape without a collision with the train which was so run upon them without any warning whatever; that the horse was gentle and accustomed to trains, and was under full control until he became unmanageable, as above stated; that appellee was unacquainted with the crossing,

did not know the time of trains, was not familiar with the warnings and obstructions, and had never before traveled over the crossing; that those in charge of the train negligently and carelessly operated it in this: that no warning was given of its approach by ringing the bell, sounding the whistle, or otherwise, and negligently and carelessly failed to have any light on the end of the car; that appellee and her husband had no knowledge of the approach of the train, and that appellee was free from fault.

The theory of the pleading is that, because of the failure of those in charge of the train to give any warning of its approach, appellee was induced to approach within an unsafe proximity to the crossing, and because of this close proximity the horse became frightened at the train and became unmanageable. The object in requiring signals to be given is not altogether to prevent a collision with the train, but to enable travelers approaching the crossing to avoid the danger arising from being in close proximity to the track when the train passes. The pleading shows that the negligence of appellant in failing to give any signals or warning of the approach of the train was the proximate cause of the injury; and that this negligence on the part of those in charge of the train led appellee into a place of danger. The proximate cause of an injury is not necessarily the immediate cause, but must be the efficient cause, and the efficient cause is that which sets in motion the chain of circumstances leading up to the injury. Causes that are merely incidental to a superior or controlling agency are not proximate causes, though they may be nearer in time to the result. Under the facts averred it was not necessary to show that the train was running at any particular rate of speed. This is not the negligence relied upon. While the failure to give signals or warnings does not excuse the traveler from exercising due care, yet the failure to give them may be considered in determining the question of the traveler's conduct before and at the time he approached

the crossing. The pleading clearly shows that appellee and her husband approached the crossing with caution, and that they were trying to avoid danger. They were not required to do more than exercise prudence and caution in proportion to the dangers incident to such a crossing, as the facts averred show this one to have been. And we think the complaint shows this. There was no error in overruling the demurrer to the complaint. See *Terre Haute, etc., R. Co.* v. *Brunker,* 128 Ind. 542; *Pennsylvania Co.* v. *Congdon,* 134 Ind. 226, 39 Am. St. 251; *Pittsburgh, etc., R. Co.* v. *Burton,* 139 Ind. 357.

It is further argued that the answers to interrogatories show appellant was entitled to judgment. It is not necessary that appellant's liability should be shown by the answers to the interrogatories. The general verdict finds appellant guilty of negligence, and, unless the answers are in conflict with the general verdict, it must stand. The conduct of those in charge of the train in failing to give any warning of the approach of the train is not excused by the fact that two employes were on top of the train, one of whom was on the front car, on the lookout, who saw appellee as soon as she and her husband came within the range of his vision, and who instantly gave the signal, and the train promptly stopped. The jury expressly find that he gave no warning to appellee and her husband, and that one of the men on top of the cars saw appellee and her husband approaching the crossing. The train was about six hundred feet long, and was being pushed backwards at a rate of about two miles per hour. If, because of the location of the engine, signals could not have been heard at the crossing, it was the duty of the appellant to give warning of the approaching train in some other way. In the absence of the statute requiring signals, it is the duty of the railroad company to give reasonable and timely warning of the approach of its trains to highways. *Pittsburgh, etc., R. Co.* v. *Burton, supra.* It is true, it is found that

when the employe discovered the presence of appellee he signaled the engineer to stop, and it appears that everything was then done that could be done to prevent the injury; but these efforts did not excuse the former negligence through which appellee had been brought into a place of danger. We find nothing in the answers to interrogatories on the question of contributory negligence which overthrows the general verdict in appellee's favor. The jury finds that there was one short "strand" of small sleigh-bells on the horse, and that these were making a noise as they approached the crossing, but they find that the noise of the bells did not interfere with or prevent appellee and her husband from hearing the approaching cars.

An ordinance of the city of Muncie was read in evidence by appellant, and was afterwards, over appellant's objection, struck out on appellee's motion. Appellee insists that the ordinance struck out was not the ordinance offered in evidence. Appellant offered in evidence an ordinance passed June 19, 1879, on page 129 of the book of city ordinances, of the date of 1892. Objection was made that, when the ordinance was passed, there was in force a statute requiring the sounding of the whistle at crossings; that since that time the statute had been repealed, and the ordinance had not been readopted; and that the ordinance had been amended and was not in force. The court overruled the objection, and "admitted said ordinance" in evidence. "Said ordinance so admitted" is then set out, but bears date June 9, 1879. Appellee then moved to strike out the "ordinance introduced in evidence;" stating, in effect, the reasons given in objecting to its introduction. This motion was sustained, "being the ordinance of the city of Muncie passed June 9, 1879, and found on page 129 of the book of ordinances of the city of Muncie of the date of 1892." We must conclude from the record that there was but one ordinance offered, one put in evidence, and one stricken out, and that this was the same ordinance, and that the date of

the ordinance was mistakenly written the 19th instead of the 9th.

The ordinance prohibits any railroad company, locomotive engineer, fireman, or employe to sound any locomotive engine whistle within the corporate limits of the city of Muncie, affixing a penalty, provided that nothing in the ordinance "shall prohibit such company, or its employes, from sounding fire alarms, or signals necessary for the transaction of the business of such company, or such danger signals as are necessary for the protection of life and property." The act of March 29, 1879 (Acts 1879, p. 173, §5307 Burns 1901), required the sounding of a locomotive engine whistle upon approaching a crossing, but provided "that nothing herein shall be so construed as to interfere with any ordinance that has been, or may hereafter be passed by any city in this State regulating the management or running of such engine or railroad within the limits of such city." Under this proviso the city of Muncie was not prohibited from adopting such an ordinance as the one in question. The act of 1879 was amended in 1881, and the amended act (§5307, *supra*) contains the same proviso, except it is extended to incorporated towns also. That is, whatever right the city had prior to 1879 to regulate the running of trains within the city limits was in no way abridged by these statutes, and it is not questioned that it did have power to regulate by ordinance the running of trains within the city limits. It follows that the ordinance of June 9, 1879, was an act within the city's powers, and, unless it had been repealed, was in force at the time of the trial. The question, then, is, what is the effect of the proviso to the ordinance. By the ordinance the company is prohibited from sounding a locomotive engine whistle within the city limits, and by the proviso it is not prohibited "from sounding * * * such danger signals as are necessary for the protection of life and property." The city had the power to prohibit by ordinance the sounding

of the whistle for any purpose, but by the proviso it excepted from the ordinance certain signals. The ordinance and proviso can not be construed as meaning that these certain signals shall be given, but simply that they are not prohibited. That is, the company's right or duty to sound danger signals for the protection of life or property is in no way affected by the ordinance, and this right or duty exists, or does not exist, without reference to the ordinance. If, then, there was in force a statute requiring the company to give such danger signals as are necessary for the protection of life and property, it applied within as well as without the city limits. It has been held that the statute requiring signals at crossings was designed to protect human life. *Pittsburgh, etc., R. Co.* v. *Brown,* 67 Ind. 45, 33 Am. Rep. 73. As this kind of signals was not prohibited by the ordinance, and it was a statutory duty to give such signals, a failure to give them was negligence. It follows from what we have said that the ordinance was not material, and it was not error to strike it out.

Instruction number four reads: "The court instructs the jury that, under the law as it now is, contributory negligence on the part of the plaintiff is a matter of defense, and must be proved by a fair preponderance of the evidence in the case. But such contributory negligence may be proved by witnesses introduced by the defendant or those introduced by the plaintiff, or by both." It is quite true that the defendant in this class of cases is entitled to have the jury informed that if, from the whole evidence, it appears that a plaintiff contributed proximately to his injury, he can not recover, and it is clear that the word "evidence" should have been used instead of the word "witnesses;" but, taking the instruction as a whole, it is not necessarily misleading. The jury were told that contributory negligence must be proved by a fair preponderance of the evidence in the case, and that it may be proved by witnesses on either side or both. The jury were also

told in another instruction that "if you find from the evidence in this case that the plaintiff was guilty of any negligence on her part which proximately contributed to the injuries of which she complains, your verdict should be for the defendant, although you should find that the defendant was guilty of negligence." We can not say that the giving of the fourth instruction was reversible error.

Instruction six and one-half does not take from the jury the question of appellee's contributory negligence, as it does not say that, if certain facts are found to be true, appellant is liable, but only says that such facts would show appellant's negligence. If the company operating a train of cars, on approaching the crossing, failed to give signals and warnings of the approach of the cars and engine, and, because of such failure, appellee was induced to approach within an unsafe proximity to the crossing when the train was passing, and the horse became frightened at the train, and became unmanageable because thereof, and injured appellee, such conduct of appellant would be negligent.

Appellee's husband, testifying as a witness, was asked to state to the jury—"using her language—what exclamations of pain, if any, she had given since the date of the accident." Over appellant's objection the witness answered: "She says, 'my back and hip hurts me.'" One of the questions in controversy was the nature and extent of appellee's injuries. The answer of the witness was not hearsay evidence. He was not narrating what appellee had said of past sufferings, but gave to the jury appellee's expression of present, existing pain. It was proper to show the extent of appellee's suffering, and her declarations and complaints at the time were competent. See *Cleveland, etc., R. Co.* v. *Newell,* 104 Ind. 264, 54 Am. Rep. 312; *Carthage Turnpike Co.* v. *Andrews,* 102 Ind. 138, 52 Am. Rep. 653; *City of Alexandria* v. *Young,* 20 Ind. App. 672.

Appellant also claims that the damages assessed by the jury are excessive. It would serve no good purpose to dis-

cuss the voluminous evidence on this branch of the case. There is evidence to show that appellee was seriously injured, and that at the time of the trial, in December, 1902, she was still suffering from the injury which was received in January, 1901. Upon a careful consideration of all the evidence as to the nature and extent of the injuries, we do not think it can be said that there is no evidence from which the jury could conclude that the injuries are of a permanent character. Upon all the evidence the jury could have concluded that the injury would be permanent. See *Ohio, etc., R. Co.* v. *Cosby,* 107 Ind. 32; *Louisville, etc., R. Co.* v. *Williams,* 20 Ind. App. 576.

Judgment affirmed.