# Pittsburgh, Cincinnati, Chicago and St. Louis Railway Company *v.* Terrell.

[No. 21,948. Filed October 5, 1911. Rehearing denied April 26, 1912.]

1. **Railroads. —** *Crossing Accident.—Allegation of Duty.—Complaint.*—In an action against a railroad company for injuries sustained in a crossing accident, the allegations of the complaint that plaintiff was a traveler riding in a horse drawn vehicle at dark of a winter evening on a much traveled street which was intersected by defendant's railroad, that when she entered upon the railroad track at the street crossing defendant drove one of its locomotives with a train of cars backwards over and across the crossing at a speed of thirty miles an hour, without a light, without sounding a whistle or ringing a bell, or giving other signal, and that it ran said train against and over plaintiff at and on said crossing, causing her injuries, are sufficient to show a violation of both a statutory and a common-law duty to give warning of the approach of the train to the crossing.   p. 449.

2. **Railroads.—***Crossing Accidents.—Failure to Give Signals.*—The failure of a railroad company to give signals of the approach of its trains to highway crossings is a violation of its duty to travelers on such highway and constitutes negligence.   p. 453.

3. **Railroads.—***Crossing Signals.—Street Crossing.—Statute.*—The statutory duty of giving warning of the approach of trains to highway crossings applies to the crossings of streets in cities and towns, unless such signals are prohibited by ordinance.   p. 454.

4. **Railroads.—***Crossing Signals.—Train on Switch Track.—Application of Statute.*—Under §5431 Burns 1908, §4020 R. S. 1881, requiring that a person operating locomotive shall, when approaching a highway crossing, and not less than eighty nor more than one hundred rods therefrom, sound the whistle three times and thereafter ring the bell continuously until the crossing is passed, the duty to ring the bell continuously until the crossing is passed applies to a train being pushed by a locomotive on a switch track, even though the train is started at a point less than eighty rods from the crossing.   p. 455.

5. **Railroads.—***Crossing Accident.—Signals.—Common-Law Duty.*—Where a train was backing toward and over a crossing at the rate of thirty miles an hour at dark, the failure to signal its approach in any manner was a violation of defendant's common-law duty and constitutes negligence.   p. 457.

6. **Railroads.—***Crossing Accident.—Negligence.—Proximate Cause.—Complaint.*—Where plaintiff alleged that she was a traveler on

a public street and was injured at defendant's crossing on said street by a train which was backed toward and over said crossing at dark without giving any signal or warning of its approach, it is sufficiently shown that defendant's negligence was the proximate cause of the injury without directly alleging that she would have heard or seen a signal if given or displayed. p. 457.

7. APPEAL.—*Motion for New Trial.—Waiver of Causes.*—Causes set forth in a motion for new trial are waived on appeal by failure to state any proposition, point or authority in support thereof. p. 457.

8. RAILROADS.—*Crossing Accident.—Breach of Duty.—Evidence.*—In an action for injuries sustained in a crossing accident, where it was conceded that no whistle was blown or light displayed, and the evidence shows that the train approached the crossing with little noise and without sounding the bell and at a speed of about thirty miles an hour and struck the vehicle in which plaintiff was riding, a breach of the duty owing by defendant to signal the approach of its train is proved. p. 457.

9. RAILROADS. — *Crossing Accident. — Contributory Negligence.—Duty of Traveler.*—Where the evidence shows that plaintiff was traveling at dark on a much used street, crossed by defendant's main and switch tracks and over which she was compelled to travel, that she was familiar with the crossing, that her view of the tracks was obstructed until from within six to ten feet of the switch, that she was riding on a seat that was open so that she could see and hear, that on approaching the crossing the horse was walking slowly, that plaintiff looked and listened and heard and saw no train until the horse had entered on the track, and that plaintiff could have heard and seen signals if any had been given or displayed, it cannot be said as a matter of law that plaintiff's failure to stop and go upon the track in advance of the horse was negligence which contributed to her injury. p. 458.

10. APPEAL.—*Harmless Error.—Instructions.*—Technical inaccuracies in instructions are harmless, where the jury was not misled to the prejudice of the substantial rights of appellant. p. 459.

11. RAILROADS.—*Crossing Accidents.—Duty of Traveler.—Instructions.*—A requested instruction which stated that plaintiff had no right to proceed to cross the tracks "until she knew it was safe to do so," and that she could not recover for any injury sustained because of her failure "to ascertain and know that no train was coming close to the crossing," fixes a higher degree of care than that required by the law and was properly refused. p. 460.

From Wabash Circuit Court; *A. H. Plummer,* Judge.

Action by Lydia O. Terrell against the Pittsburgh, Cincinnati, Chicago and St. Louis Railway Company. From a judgment for plaintiff, the defendant appeals. (Transferred from the Appellate Court under §1405 Burns 1908, Acts 1901 p. 590.)  *Affirmed.*

*George E. Ross,* for appellant.

*Manley & Strickler, Byron K. Elliott* and *William F. Elliott,* for appellee.

Cox, J.—Appellee recovered a judgment in the lower court against appellant, for personal injuries, alleged to have been inflicted upon her by the negligence of appellant's employes in the movement of one of its switching trains across a public street in the city of Marion, whereby the train was backed into a wagon in which appellee was riding with her husband, who was driving.

From this judgment of $2,250, appellant prosecutes this appeal, and charges error on the part of the trial court in overruling its demurrer to the complaint of appellee, its motion for a new trial, and its motion in arrest of judgment. By the first and last specifications of error the sufficiency of the complaint is brought in question by appellant.

The complaint is substantially as follows: Plaintiff, complains of defendant, and says that said defendant is now, and has been for more than ten years last past,

1. a corporation duly organized and incorporated, and has, during the last past ten years or more, owned and operated and controlled a line of railroad from the city of Pittsburgh, in the State of Pennsylvania, in and through the said county of Grant, in the State of Indiana, to the city of Chicago, in the State of Illinois, running into and through a large number of intervening cities, towns and stations; that in operating and managing its said road said defendant has, during said time, and did on the 17th day of December, 1906, own and use, and still owns and uses, a large number of locomotive engines and trains of cars, both

freight and passenger; that said defendant runs over its said road daily a large number of freight- and passenger-trains, hauled and drawn by its said locomotive engines; that it has and maintains, and did have and maintain, at the city of Marion, in Grant county, in the State of Indiana, on or about December 17, 1906, side-tracks, switches and spurs, and all the usual and necessary convenience for managing and operating its said road; that on December 17, 1906, one of defendant's said side-tracks, switches or spurs extended across a public street and highway in the western part of the city of Marion, known and called Second street, or Delphi avenue; that the defendant's said tracks and railroad in crossing said Second street, or Delphi avenue, run nearly due north and south, or at about right angles with said street, and that said Second street, or Delphi avenue, runs east and west in said city of Marion; that said Second street, or Delphi avenue, is about forty feet wide, and is paved with brick up to the east line of defendant's said track; that where said railroad crosses said Second street, or Delphi avenue, in the city of Marion, people are constantly passing and repassing and crossing said tracks of said railroad company.

Plaintiff further avers that on December 17, 1906, just at dark in the evening, she, in company with her husband, was driving in a one-seated, one-horse wagon, along and upon said Second street, or Delphi avenue, as travelers thereon; that when about 100 feet from said crossing, and approaching the same from the east, her said husband driving, he, her said husband, checked the horse, and drove in a slow walk, and she and her said husband looked and listened, to see and hear if a train of cars, or an engine was approaching said crossing; that she and her said husband looked both to the north and south, up and down said railroad track, and continued so to look and listen for any signal or any sound of an approaching train or engine; that they neither of them saw nor heard any train or engine

approaching, and not seeing or hearing any locomotive engine or train, and not hearing or seeing any signals given, they started to drive across said track, approaching it from the east; that as the horse the plaintiff and her husband were driving approached defendant's said tracks, and just as plaintiff and her said husband entered upon said track at said crossing, defendant carelessly and negligently ran and operated a certain locomotive engine and cars, along, over and upon its said track and road at said crossing in a south or nearly south direction, and so operated and ran said locomotive and cars backward over and across said crossing at a dangerous and reckless rate of speed, to wit, about thirty miles per hour, and without having any light on the rear end of said train of cars, as a signal of its approach to travelers; that defendant, its agents and servants, in the operation and management of said train of cars and engine, carelessly and negligently failed to sound the whistle, or to ring the bell, or to have any light on the front end of said train of cars, the end that was in front in the moving of said train of cars, and carelessly and negligently failed to give any signal whatever of the approach of said cars or train; that on the east side of said railroad track, and on the north side of said Second street, at said point where said accident occurred at said crossing, there are buildings projecting out to the east side of said railroad track, and to the north of said Second street, which obstruct the view of said railroad tracks and its trains to the north of said railroad track as approached from the east; that by reason of the said obstruction, and by reason of the rapid speed at which said train was run, and by reason of the defendant, its agents and servants failing to sound the whistle or ring the bell, and by reason of said defendant, its agents or servants failing to have a light on the rear of said train when it was pushing it across a public street when it was dark, and by reason of the defendant, its agents or servants failing to give any signals whatever of the approach of its said train at said

time and place; and for the further reason that said train approached said crossing so quietly and so silently that its approach could not be heard or seen by this plaintiff or by her companion, although they and each of them had good eyesight and good hearing; that as said engine and train of cars approached said crossing in said careless and negligent manner, as aforesaid, just as this plaintiff and her companion were crossing said railroad track, they were run against and over by said train of cars at and on said crossing; that plaintiff was thrown from the wagon, in which she and her husband were riding, with great force and violence, and was hurled a great distance, by reason of being struck by said train of cars at said crossing, and was badly injured thereby, by having her spinal column injured and sprained, some of her ribs broken, her ankle fractured, sprained and broken, and the ligaments thereof torn loose, her shoulder and back mashed, bruised and injured, by reason of which she (the plaintiff) has received lasting, permanent injuries; that she is now crippled, and will, as she believes and is informed by her doctors, remain a cripple during the remainder of her natural life; that she is unable, and has been ever since the injury aforesaid, to do her work as housekeeper and to attend to her home duties; that she has been under the doctor's care ever since said injury, and is still the object of his care and treatment, and will so continue to remain. Wherefore, by reason of the facts heretofore stated, she has been damaged in the sum of $5,000; that said injuries were received without any fault whatever of the plaintiff or her companion who was with her at the time, but wholly on account of the careless and negligent manner in which defendant was running and operating its said locomotive engine and cars, by running upon said crossing of said street, as aforesaid, without giving any signal, sounding any whistle, or without having any light or lights thereon so that they could have been seen by persons crossing said tracks, and without having any person

or persons on the rear end of the car being pushed across said crossing, or in any manner or way making any provisions for the safety of the traveling public at said crossing. Wherefore she prays for judgment, etc.

It is the contention of counsel for appellant that the complaint does not allege facts showing a duty owing to appellant in the operation of its train and the violation of it. While it may be at once conceded that the complaint is not a model of clear, concise and orderly allegation of actionable facts, it is quite clear that it does directly allege facts sufficient to show a violation of both a statutory and a common-law duty to give warning of the approach of the train to a highway crossing. It is alleged that appellee, together with her husband, was a traveler, at dark of a winter evening, on a public highway, a much traveled street of the city of Marion, riding in a horse drawn vehicle thereon and approaching the point where the street was intersected by appellant's railroad tracks; that when they had entered upon the tracks at the street crossing, in pursuing their journey as travelers along the street, appellant drove one of its locomotive engines with a train of cars backwards over and across the crossing at a speed of thirty miles an hour, without a light, without sounding a whistle or ringing a bell, or giving other signal to warn that the train was approaching the crossing, and that just as plaintiff and her husband were crossing said railroad track they were run against and over by said train of cars at and on said crossing, causing plaintiff's injuries.

It has long been settled by many decisions of this court, that the failure of a railroad company, in the operation of its road, to give the signals enjoined by statute of the 2. approach of its trains to public highways crossed by its tracks is a violation of its duty owing to travelers on such highway, and constitutes negligence, giving rise to a cause of action in favor of such a traveler who has been injured thereby, without negligence on his part which con-

tributed to his injury. Indeed, the statute itself expressly makes the railroad company in such case liable. §§5431, 5432 Burns 1908, §§4020, 4021 R. S. 1881; *Chicago, etc., R. Co.* v. *Boggs* (1885), 101 Ind. 522, 51 Am. Rep. 761; *Cincinnati, etc., R. Co.* v. *Butler* (1885), 103 Ind. 31, 2 N. E. 138; *Baltimore, etc., R. Co.* v. *Walborn* (1891), 127 Ind. 142, 26 N. E. 207; *Greenawaldt* v. *Lake Shore, etc., R. Co.* (1905), 165 Ind. 219, 74 N. E. 1081; *Cincinnati, etc., R. Co.* v. *Grames* (1894), 8 Ind. App. 112, 34 N. E. 613, 37 N. E. 421; *New York, etc., R. Co.* v. *Robbins* (1906), 38 Ind. App. 172, 76 N. E. 804; *Chicago, etc., R. Co.* v. *Coon* (1911), 48 Ind. App. 675, 93 N. E. 561, 95 N. E. 596.

That the statutory duty of giving warning of the approach of trains to highway crossings applies to the crossings of streets in cities and towns, unless the statutory signals are prohibited by ordinance passed pursuant to the power granted to cities and towns to regulate the running of trains therein, has been recognized and impliedly decided by many of our cases. *Cincinnati, etc., R. Co.* v. *Butler, supra; Baltimore, etc., R. Co.* v. *Walborn, supra; Pittsburgh, etc., R. Co.* v. *Burton* (1894), 139 Ind. 357, 37 N. E. 150, 38 N. E. 594; *Chicago, etc., R. Co.* v. *Fenn* (1892), 3 Ind. App. 250, 29 N. E. 790; *Cincinnati, etc., R. Co.* v. *Grames, supra; Chicago, etc., R. Co.* v. *Butler* (1894), 10 Ind. App. 244, 38 N. E. 1; *Pittsburgh, etc., R. Co.* v. *Shaw* (1896), 15 Ind. App. 173, 43 N. E. 957; *Lake Shore, etc., R. Co.* v. *Boyts* (1897), 16 Ind. App. 640, 45 N. E. 812; *Aurelius* v. *Lake Erie, etc., R. Co.* (1898), 19 Ind. App. 584, 49 N. E. 857; *Cleveland, etc., R. Co.* v. *Carey* (1904), 33 Ind. App. 275, 71 N. E. 244; *Pennsylvania Co.* v. *Fertig* (1905), 34 Ind. App. 459, 70 N. E. 834; *Chicago, etc., R. Co.* v. *Coon, supra*.

And it has been expressly so decided in the case of *Cleveland, etc., R. Co.* v. *Carey, supra,* wherein it was held that the statute was in force in a city, notwithstanding the fact that there was then in force in such city an ordinance pro-

hibiting the sounding of railroad whistles, except to give "such danger signals as are necessary for the protection of life and property."

But it is argued by counsel for appellant, that because it is not specifically alleged that the train in question was one running between given points on the main track, or that it came from beyond a point eighty rods from the crossing, it fails to allege facts showing a violation of the statutory duty imposed on appellant. In other words, as we understand appellant's contention, it is, that the statute requiring signals to be given does not apply to a train of cars on a switch pushed by a locomotive attached to it, especially when started at a point less than the required statutory distance for giving signals, and that as it appears from the complaint that the train which it is alleged struck plaintiff was backed over the crossing on a switch, it was at least necessary to allege facts showing that the train came from a distance more than eighty rods away to show a violation of the statutory duty. The reason for the application of the statute to a train running over a switch track which crosses a highway is as obvious as that for applying it to a train running on a main track. A railroad company at common law is under a duty, in the operation of its trains over highway crossings, of using reasonable and ordinary care to avoid injury to travelers at and on highways which are intersected by its tracks. The statute requiring the giving of signals of the approach of trains to crossings is said to be the expression of the minimum care required. That the approach of a backing train, with the locomotive at the end farthest from the point of crossing, would ordinarily be less readily observed by a traveler on a highway, is clear to the mind, and that the statute should apply to such a train is at once evident. The statute requires that the engineer, or other person in charge of or operating a locomotive engine, shall, when such engine approaches a highway crossing, and not less than eighty and not more than one hundred

rods therefrom, sound the whistle three times, and ring the bell continuously thereafter until the crossing is passed. We know of no case in this State which has considered and determined whether, when a train begins to move towards a highway crossing from a stop less than eighty rods from the crossing, the statutory duty of blowing the whistle arises. In some other jurisdictions under like statutes it has been held that in such case the statute requires the sounding of the whistle. See *Lake Shore, etc., R. Co.* v. *Johnsen* (1891), 135 Ill. 641, 653, 26 N. E. 510; *Spiller* v. *St. Louis, etc., R. Co.* (1905), 112 Mo. App. 491, 87 S. W. 43; 33 Cyc. 966.

But conceding that the statutory duty to sound the whistle in each case does not arise, there still remains the duty to ring the bell continuously until the crossing is passed, and it would be wholly contrary to the plain purpose of the statute to say that, in so far as the duty to ring the bell is concerned, the statute does not apply to a train that is being backed over a highway crossing from a point less than eighty rods therefrom. That the duty to ring the bell in warning does flow from such a statute has been frequently held by the courts of other states. *Gulf, etc., R. Co.* v. *Hall* (1904), 34 Tex. Civ. App. 535, 80 S. W. 133; *Fort Worth, etc., R. Co.* v. *Greer* (1903), 32 Tex. Civ. App. 606, 75 S. W. 552; *Mitchell* v. *Union Terminal R. Co.* (1904), 122 Iowa 237, 97 N. W. 1112; *Spiller* v. *St. Louis, etc., R. Co., supra; Herring* v. *Wabash R. Co.* (1899), 80 Mo. App. 562; *Canada, etc., R. Co.* v. *Henderson* (1899), 29 Can. Sup. Ct. 632.

As the complaint in this case directly alleges that no whistle was sounded or bell rung or any other signal given by appellant's employes in charge of the engine in question, it at least charged the violation of a statutory duty in failing to ring the bell.

But independently of the statute, it is the duty of those in charge of a railroad train to give reasonable and timely warning of its approach to a street or highway crossing.

*Indianapolis, etc., R. Co.* v. *Hamilton* (1873), 44 Ind. 76; *Pittsburgh, etc., R. Co.* v. *Martin* (1882), 82 Ind. 476; *Pittsburgh, etc., R. Co.* v. *Burton* (1894), 139 Ind. 357, 377, 37 N. E. 150, 38 N. E. 594; *Cleveland, etc., R. Co.* v. *Miles* (1904), 162 Ind. 646, 70 N. E. 985.

And especially is this true in the case of a backing train. *Lake Shore, etc., R. Co.* v. *Boyts, supra; Cleveland, etc., R. Co.* v. *Carey, supra.* See, also, 3 Elliott, Railroads §§1153-1158.

The complaint directly alleges a failure to give any signals of any character, by whistle, bell or light on the rear, while the train was backing toward and over the crossing at the rate of thirty miles an hour at dark. This was a gross and culpable violation of appellant's common-law duty and consequently, negligence.

It is finally argued by appellant's counsel, that the complaint does not show that appellant's negligence was the proximate cause of appellee's injury, because it does not directly allege that she would have heard a signal if given or seen a light if displayed on the backing car. Such allegations were not required; the general averments sufficiently show that appellant's negligence, as alleged, was the proximate cause of the injury to appellee. *Greenawaldt* v. *Lake Shore, etc., R. Co., supra.*

The overruling of appellant's motion for a new trial is assigned as error. The motion for a new trial states numerous causes, but all are waived by appellant by a failure to state any proposition, point or authority in support thereof, except those questioning the sufficiency of the evidence to sustain the verdict, and the action of the trial court in giving and refusing certain instructions.

As to the contention of counsel for appellant, that the evidence does not prove the breach of a duty by appellant owed to appellee, it may be said that the evidence amply sustains every allegation of the complaint as to the failure to signal the approach to the crossing of

appellant's backing train, at dark, by whistle, bell, or a light on the coal-car, which was the nearest part of the train. Indeed, on the trial appellant's counsel expressly conceded that no whistle was blown or light displayed. The evidence fairly sustains the charge that the train moved over the crossing at a speed of about thirty miles an hour, struck the vehicle in which appellee was riding, and carried it forward from fifty to seventy-five feet, when the car which struck the vehicle was derailed. And it appears that the train was making little noise as it approached. There was testimony for appellant, from the conductor and brakeman, that the bell was rung, and that the speed was not more than eight miles an hour. But the weight of the evidence sustains the complaint in these particulars. The fact that the testimony of neither the fireman nor engineer was given is not without significance, particularly as to the ringing of the bell.

It is contended by counsel for appellant that as it appears that appellee did not require her vehicle to be stopped before entering upon the crossing of appellant's tracks, 9. alight therefrom, and go upon the tracks in quest of an approaching train, she, in failing so to do, was guilty of negligence as a matter of law, which was the proximate cause of her injury. To sustain such a contention in this case would be practically to deprive the public of the use of the streets of cities and towns where they are crossed by the tracks of railroads. The evidence shows that appellee and her husband were traveling on a much-used street at dark of a winter evening, going to their home near the city of Marion. The street was crossed by appellant's main track and switch-track over which they were compelled to travel to reach their home. They were familiar with the crossing, having passed over it many times in safety. Their view of the tracks of appellant in the direction from which the train which struck them came was obstructed by coal sheds and other buildings, so that for a distance of about one hundred feet from the switch on which the train ran to a point within

from six to ten feet of the switch a train approaching thereon could not readily be seen. They were sitting together on a seat, in the front of a florist's wagon, which was drawn by a gentle horse. The husband was driving. The seat was open, so that they could see and hear. On approaching the crossing, the horse was pulled down to a very slow walk, about a mile and a half or two miles an hour. The eyesight and hearing of both were unimpaired. Both of them kept looking in both directions for an approaching train, and listened continuously, and heard or saw none until the horse had entered upon the switch-track, and the coal-car of the backing train, running quietly without light or signal of any kind, appeared out of the dusk and almost at once struck them. If signals had been given they could have heard them, and if a light had been displayed they could have seen it. Under these circumstances, it was for the jury to determine whether appellee was guilty of contributory negligence. It cannot be said, as a matter of law, that her failure to stop entirely, or to stop and go upon the track in advance of the horse, was negligence which contributed to her injury. In the absence of signals or light, it is not sure that either would have been effective in avoiding the collision. *Pittsburgh, etc., R. Co.* v. *Martin* (1882), 82 Ind. 476, 483; *Pittsburgh, etc., R. Co.* v. *Wright* (1881), 80 Ind. 236; *Malott* v. *Hawkins* (1902), 159 Ind. 127, 63 N. E. 308; *Greenawaldt* v. *Lake Shore, etc., R. Co., supra; Chicago, etc., R. Co.* v. *Turner* (1904), 33 Ind. App. 265, 69 N. E. 484; *Baltimore, etc., R. Co.* v. *Rosborough* (1907), 40 Ind. App. 14, 80 N. E. 869; *Pittsburgh, etc., R. Co.* v. *Lynch* (1909), 43 Ind. App. 177, 87 N. E. 40.

Counsel for appellant complains at some length of a number of instructions given by the court of its own motion and at the request of appellee, and of the refusal of the 10. court to give a number of instructions requested by appellant. While there may be some technical inaccuracies in one or more of the instructions given an exam-

ination of them discloses none that was calculated to mislead the jury or to prejudice the substantial rights of appellant. Taking all of the instructions given together, they were quite as favorable to appellant as the case made warranted.

Instruction three, requested by appellant and refused by the court, told the jury that appellee had no right to proceed to cross the tracks "until she *knew* it was safe to do so," and that she could not recover for an injury sustained because of her failure "to ascertain and *know* that no train was coming close to the crossing." The law did not require the high degree of care of appellee, practically insuring her own safety, that this instruction would have held her to.

Instruction four, requested, was correctly refused, because the same vice inheres in it.

Instructions thirteen, sixteen and eighteen, in so far as they state the law correctly, were covered by other instructions given. Moreover they contained incorrect statements of the law as to appellee's duty. As before stated in this opinion, it cannot be said as a matter of law that appellee's failure to stop the horse, and to precede it upon the track, and there look and listen made her guilty of contributory negligence.

The case seems to have been fairly tried, and substantial justice reached in the trial court, and its judgment is affirmed.

NOTE.—Reported in 95 N. E. 1109. See, also, under (1) 33 Cyc. 1053, 1058; (2) 33 Cyc. 958; (3) 33 Cyc. 959; (4) 33 Cyc. 665, 960; (5) 33 Cyc. 955, 958; 15 Ann. Cas. 463; (6) 33 Cyc. 1053; (7) 2 Cyc. 999; (8) 33 Cyc. 1091; (9) 33 Cyc. 1095; (10) 38 Cyc. 1595; (11) 33 Cyc. 1138.