## LAKE ERIE AND WESTERN RAILROAD COMPANY *v.* MOORE.

[No. 7,336. Filed January 26, 1912. Rehearing denied June 28, 1912.]

1. RAILROADS. — *Crossing Accidents.* — *Contributory Negligence.* — *Burden of Proof.*—In an action for injuries sustained in a railroad crossing accident, contributory negligence is a matter of defense and the defendant has the burden to establish that fact. p. 115.

2. RAILROADS. — *Crossing Accidents.* — *Contributory Negligence.* — *General Verdict.*—In an action against a railroad company for injuries sustained in a crossing accident, a general verdict for plaintiff amounts to a finding for plaintiff as to all the essential facts stated in the complaint, and against defendant on the question of contributory negligence. p. 115.

3. RAILROADS.—*Crossing Accidents.*—*Answers to Interrogatories.*— *General Verdict.*—Where the complaint, in an action to recover for injuries sustained in a railroad crossing accident, alleged that plaintiff proceeded carefully toward the crossing, the jury's answers to interrogatories showing that plaintiff stopped and listened for an approaching train, but not how far he then was from the crossing, and also showing that by stopping and listening attentively when within eight feet of the sidetrack he could have heard the train, but could not have seen it before entering on the sidetrack, and that he looked and listened as he approached the crossing, but that neither was available on account of obstructions, are not sufficient, as a matter of law, to show that plaintiff was guilty of contributory negligence, so as to overcome a general verdict for plaintiff. pp. 116, 117.

4. RAILROADS.—*Crossing Accidents.*—*Duty of Traveler Approaching Crossing.*—Only exceptional circumstances require the precaution to stop, in addition to the traveler's duty to look and listen on approaching a railroad crossing. p. 117.

5. RAILROADS. — *Crossing Accidents.* — *Contributory Negligence.*— *Instructions.*—In an action for injuries sustained in a railroad crossing accident, an instruction that while it was plaintiff's duty to look and listen for approaching trains at all available points before entering upon the crossing, he was not guilty of contributory negligence, if he constantly looked and listened as he approached the crossing, and if, by reason of obstructions and the company's failure to give warning signals and the rapid speed of the train, he was unable in the exercise of due care to see or

hear the train until he was upon the railroad track, was not objectionable, since it made plaintiff's negligence to depend not alone upon certain conditions and omissions which prevented him from seeing or hearing the train in time to avoid the collision, but also upon the fact of his exercising due care, which includes, in a proper case, the duty to stop. pp. 118, 119.

6. RAILROADS.—*Travelers Approaching Crossings.—Care Required.* —A traveler on a public highway, before entering upon a railroad grade crossing must look and listen for approaching trains, and if he is injured by reason of his own neglect in this respect, the fault is *prima facie* his own, and may be so declared as a matter of law; and exceptional circumstances may require him to stop as well as to look and listen, but his duty to stop must be determined by applying the rule of care measured by the conduct of an ordinarily careful and prudent person in like situation. p. 118.

7. APPEAL. — *Review. — Harmless Error. — Instructions.* — Even though an instruction may be erroneous, where it appears from the record that the jury was not misled, nor the ultimate result influenced by a misapprehension thereof, it is within §700 Burns 1908, §658 R. S. 1881, prohibiting reversals where it appears that the merits of the cause have been fairly tried and determined in the court below. p. 119.

8. RAILROADS.—*Grade Crossing.—Care Required.*—Where railroad tracks cross a public highway at a grade, those who operate the trains, and the travelers on the highway, are each chargeable with due care with respect to the rights of the other, and the company operating its trains over such crossing must give timely warning of approach so that travelers on the highway may, by the exercise of ordinary care, avoid collision therewith. p. 119.

9. RAILROADS.—*Crossing Accident.—Care Required.—Instructions.* —In an action for injuries received in a railroad crossing accident an instruction which after stating the duty of plaintiff in approaching the crossing told the jury that it was the defendant's duty to give timely warning of the approach· of its train to the plaintiff while approaching the crossing, is not open to the objection that it required defendant to make plaintiff aware of the train's approach in time to enable him to avoid the injury, regardless of his position or conduct. pp. 119, 121.

10. RAILROADS.—*Crossing Accident.—Care Required.—Instructions.* —Where, in an action against a railroad company for injuries sustained in a crossing accident, there was no claim that defendant used any means to warn travelers approaching and intending to pass over the crossing, other than by sounding the whistle or ringing the bell on its locomotive, or that plaintiff was in any other manner warned of the approaching train, an instruction

that if the whistle was sounded as a station signal, but was not sufficient to warn plaintiff, and no other signal in the way of sounding the whistle or ringing the bell was given, defendant's duty in that regard was not fully discharged so as to relieve it from liability to give further signals, was proper. p. 120.

11. APPEAL.—*Review.*—*Harmless Error.*—*Instructions.*—In an action for injuries received in a railroad crossing accident, an instruction that defendant had the right to occupy the street with its tracks and to run its trains over them, but that this right was not exclusive, and that the running of its train at a high rate of speed over the crossing, without giving reasonable notice and warning of its approach, by ringing a bell or sounding a whistle, would make it liable to plaintiff if injured without contributory negligence while lawfully using the street and crossing, though technically incorrect in failing to connect the stated omissions with the injury, was harmless, since it must have been understood that the court had reference to the injury proximately caused by defendant's act in running its train at a high rate of speed and its omission to ring the bell or sound the whistle. p. 121.

12. APPEAL.—*Review.*—*Instructions.*—An instruction which was not within the evidence, and the giving of which would have tended to confuse the jury, was properly refused. p. 122.

13. APPEAL.—*Review.*—*Verdict.*—*Evidence.*—A verdict will not be disturbed on the ground that it is not sustained by sufficient evidence, where no essential fact to sustain the same is without legal evidence to support it. p. 122.

14. RAILROADS.—*Crossing Accident.*—*Trial.*—*Admissibility of Evidence.*—Where witnesses resided near the railroad and were familiar with the surroundings, with the running of the trains in that locality, and had frequently heard the sound of the whistle and bell, their testimony as to where the train was when it whistled and as to its speed, was properly admitted in an action to recover for injuries sustained in a crossing accident. p. 123.

15. RAILROADS. — *Crossing Accident.*—*Witnesses.*—*Cross-Examination.*—Where, in an action against a railroad company for injuries received in a crossing accident, the engineer testified on direct examination as to the speed of the train at the time of approaching the crossing, his testimony, given on cross-examination, as to the average speed of the train between certain stations, was properly admitted as affecting the weight to be given his testimony. p. 123.

16. APPEAL.—*Review.*—*Harmless Error.*—*Admission of Evidence.* —*Instructions.*—In an action against a railroad company for injuries sustained in a crossing accident, the admission of testimony regarding the flagman, watchman and gate at the crossing,

even if improper, was rendered harmless by an instruction that there was no ordinance requiring defendant to maintain a flagman, watchman or gate and that it would not be liable for any failure in that respect. p. 123.

From Hamilton Circuit Court; *Meade Vestal,* Special Judge.

Action by Burney Moore against the Lake Erie and Western Railroad Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*John B. Cockrum* and *Shirts & Ferlig,* for appellant.

*J. F. Neal, Phil J. Fariss* and *F. G. Christian,* for appellee.

MYERS, J.—Appellee sustained personal injuries in a collision with one of appellant's trains at Cass street crossing, in the town of Cicero. In an action to recover damages for such injuries, judgment was rendered in the court below in favor of appellee and against appellant. From that judgment appellant has appealed to this court, assigning as errors, (1) the overruling of its motion for judgment on the answers to interrogatories, and (2) the overruling of its motion for a new trial.

This cause is here for the second time. *Lake Erie, etc., R. Co.* v. *Moore* (1908), 42 Ind. App. 32, 81 N. E. 85, 84 N. E. 506. The complaint alleges negligence of appellant, (1) in running its engine and train of cars against appellee and· his team and carriage, with great force and violence; (2) in running its engine and train of cars at a high and dangerous rate of speed, to wit, thirty miles an hour, across Cass street, which was "much used by the traveling and general public"; (3) in failing and omitting to sound a whistle or ring a bell, or to give any warning, notice or signal of the approach of said engine and train of cars toward said crossing; that appellant had and maintained at said crossing no watchman, flagman, person, gate or other means of notifying

plaintiff or other travelers on Cass street of the approach of engines and cars toward and over said crossing.

The answers of the jury to fifty-six interrogatories, in substance, show that at the time of the accident, which occurred in the daytime on December 26, 1903, appellant maintained one main track, and one side-track across Cass street, in the town of Cicero. These tracks were parallel, the center of the side-track being thirteen feet east of the center of the main track, and north of Cass street they were not "practically straight" for 300 feet. On the north side, and fronting on said street, eight feet east of the side-track and twenty-three and one-half feet east of the main track, there was a mill and elevator. Two box-cars and one coal-car were standing on the side-track. One of·the box-cars extended about ten feet south of the elevator. These cars, mill and elevator increased the danger of the crossing. Appellant's only means of signaling the crossing was by ringing the bell on the locomotive, or sounding the whistle. The whistle was sounded at the usual whistling post, at the bridge at the north corporate limits of the town, and was not sounded at the private road crossing about 300 yards north of Cass street. The bell was not ringing from a point at least 200 feet north of, nor when the engine reached the crossing. The train which collided with appellee came from the north, and was one hour behind its regular schedule time for arrival at Cicero. Appellee knew the schedule time for its arrival, and that it was late, and had no reason to believe that it had passed the crossing, and might have had reason to believe that it was approaching the crossing from the north. He was a person of ordinary intelligence, had good eyesight and hearing, and on said ·day was familiar with the location of said crossing, tracks, buildings and structures. He approached the crossing on Cass street from the east, and when on the east side of Peru street he stopped and listened for an approaching train. He did not stop when within ten feet of the side-track, nor when between

said two tracks. As he approached and entered on the crossing, he had full control of his horses, and the collision was not caused by the horses stopping or plunging forward without plaintiff's command. When sixty feet from the crossing, he was driving at a slow trot, about three miles an hour, and continued at that speed until near the side-track, when he drove in a walk across the side-track and the main track. Had he stopped when directly south of the west line of the elevator shed, and listened attentively, he could have heard the train, and by remaining at that point would have avoided the injury. When appellee was on a line with the west side of the elevator, the train was 300 feet north of the crossing, and he did not hear it, because of obstructions, nor could he, when within from fifteen to sixty-five feet of the crossing, have heard a train approaching from the north within a distance of 400 feet of the crossing. He could not, at any time before entering upon the side-track, although he looked, have seen the train on the main track, on account of the box-cars, mill and elevator. He could not, by listening attentively, have heard it until within a few feet of the main track, unless he had stopped at a point fifteen feet east of the crossing, nor could he have avoided the injury by stopping and listening while he was between the main track and the side-track.

It is claimed that the answers of the jury show that appellee was guilty of contributory negligence. In support of this claim it is argued that his failure to stop and

1. listen attentively at places available for hearing, before driving upon the crossing, is decisive of the question against appellee. In this class of cases contributory negligence is a defense, and the burden is on the defendant to establish that fact. In this case the general ver-

2. dict amounts to a finding in favor of appellee as to all the essential facts stated in the complaint, and against appellant on the question of contributory negligence.

The jury specially found that when appellee was on the

east side of Peru street, he did stop and listen for an
3.  approaching train.   The distance between this stop
and the crossing is not found.  The answers also show
that by stopping and listening attentively when directly
south of the west line of the elevator shed, or within about
eight feet of the side-track, he could have heard the train,
but that he could not have seen it before entering upon the
side-track.  As he approached the crossing, he did look and
listen, but neither was available on account of obstructions.

The complaint states that he was driving west on Cass
street with a team of horses hitched to a carriage, in which
carriage he was seated, and that he proceeded carefully and
cautiously toward the crossing.  From these facts, and the
answers of the jury, the conclusion might be drawn that
had appellee stopped and listened attentively when his
horses were on the side-track, and approximately ten feet
from the main track, he could have heard the train.  Other-
wise he did everything that might be expected from a pru-
dent and cautious person under all the circumstances sur-
rounding him at the time.  If his failure to stop and listen
when his horses reached a point less than ten feet from a
passing train, and where he could not have seen an approach-
ing train, was not the conduct of an ordinarily careful and
prudent person, in view of the conditions there existing—
and of this fact there could not be an honest difference of
opinion among men of equal intelligence—then the question
whether he used due care would not be one for the jury,
and appellant's claim should be sustained.

But the necessity for stopping arose only when the physi-
cal surroundings made it difficult for him to see or hear an
approaching train in time to avoid a collision.  Appellee
did stop, look and listen as he approached the crossing, but
not after he passed the point opposite the west line of the
elevator shed.  That the place where he did stop ought to
have been reasonably effective, is not denied.  In view of
the complaint and the answers of the jury, we cannot say,

as a matter of law, the precise number of feet from the cross-ing he should have stopped and listened attentively, for the reason that they present a mixed question of law and fact, depending on the test, Did he exercise ordinary care, in view of the danger, in selecting the place? *Malott* v. *Haw-kins* (1902), 159 Ind. 127, 63 N. E. 308; *Cleveland, etc., R. Co.* v. *Harrington* (1892), 131 Ind. 426, 30 N. E. 37; *Chi-cago, etc., R. Co.* v. *Turner* (1904), 33 Ind. App. 264,

4. 69 N. E. 484. Exceptional circumstances only require the precaution to stop, in addition to the traveler's duty to "look and listen" exacted by the general rule espe-cially applicable to this class of cases.

In this particular case, had appellant stopped a few sec-onds for any purpose at any point, as he approached the crossing, he would have avoided the collision, and

3. again, had he approached the crossing more rapidly, in all probability, the accident would not have hap-pened. Again, had the train been farther away and not within his hearing, had he stopped, the time lost in stopping might have resulted in a collision, as did his failure to stop. In our opinion, this is not a case controlled by that line of cases where the court can say as a matter of law that appel-lee did or did not, under all of the circumstances, use ordi-nary care to avoid injury. But it is ruled by cases made to depend on facts likely to affect differently the conduct of equally prudent persons placed in like situation, and there-fore the question of appellee's negligence or due care is not one of law, but one of fact for the jury. *Stoy* v. *Louisville, etc., R. Co.* (1903), 160 Ind. 144, 66 N. E. 615; *Cleveland, etc., R. Co.* v. *Harrington, supra; Baltimore, etc., R. Co.* v. *Walborn* (1891), 127 Ind. 142, 26 N. E. 207; *Cincinnati, etc., R. Co.* v. *Grames* (1893), 136 Ind. 39, 34 N. E. 714.

The facts specially found by the jury are not in irrecon-cilable conflict with the general verdict.

Appellant, in support of its motion for a new trial, in-sists that it was harmed by instructions three, three and one-

half, four, five and six, given by the court at appellee's request, by instruction one, given by the court on its own motion, by the court's refusal to give instruction twenty, requested by it, in permitting appellee to introduce certain testimony over its objection, and, also, that the verdict is not sustained by sufficient evidence. By instruction three the jury was told that "while it was the duty of the

5. plaintiff, before entering upon the crossing, to look and listen for approaching trains at any and all points where such looking and listening might enable him to see or hear an approaching train, yet if plaintiff was, as he approached said crossing, constantly looking and listening for an approaching train, and if, by reason of obstructions to his view and hearing, and failure to give warning signals and the high and rapid rate of speed of said train, the plaintiff was not able in the exercise of due care to see or hear said train until he was upon the railroad track and too late to escape from his perilous position, then he was not guilty of negligence contributing to his injury." It is argued that this instruction was erroneous, because it failed to tell the jury that appellee should have stopped before entering upon the crossing; that it impliedly told the jury that appellee was not required to stop; that it invaded the province of the jury by limiting it to the "look and listen" rule.

Under the particular circumstances of this case, the instruction is well subject to criticism for lack of clearness, as well as doubtful comprehensiveness in stating the law on the subject it was intended to cover. A traveler on

6. a public highway, before entering on a railroad grade crossing, must look and listen for approaching trains, and if he is injured in a collision with a train, by reason of his own neglect in this respect, the fault is *prima facie* his own, and it may be so declared as a matter of law. Exceptional circumstances may require him to stop, as well as to look and listen, but in such cases no inflexible rule can be declared prescribing the circumstances making it his duty

to stop. Consequently, cases involving the question of the traveler's duty to stop must be determined by applying the rule of care measured by the conduct of an ordinarily careful and prudent person in like situation. By the instruction under consideration, appellee's negligence was made to depend, not alone on certain conditions and omissions which prevented him from seeing or hearing the approaching train in time to avoid the collision, but on the further fact of his exercising due care, which includes, in a proper case, a duty to stop, a question for the jury in determining whether or not he exercised due care. With this view of the instruction, and as we are convinced by the record that the jury was not misled, or the ultimate result influenced by a misapprehension of the instruction, the question is one within the statute against reversals, "where it shall appear to the court that the merits of the cause have been fairly tried and determined in the court below." §700 Burns 1908, §658 R. S. 1881. See *Terre Haute, etc., R. Co.* v. *Salmon* (1905), 34 Ind. App. 564, 73 N. E. 268; *Indianapolis St. R. Co.* v. *Schomberg* (1905), 164 Ind. 111, 72 N. E. 1041.

Instruction three and one-half, after stating the duty of plaintiff in approaching the crossing, told the jury that it was the duty of defendant to give to plaintiff, while approaching said crossing, timely warning of the approach of its locomotive and train of cars on said railroad. This instruction is criticised on the ground that it required appellant to make appellee aware of the train's approach in time to enable him to avoid a collision, regardless of his position or conduct, and as the statute relating to signals at crossings applies to rural highway crossings only, and as there was no ordinance of the town requiring signals for street crossings, it was for the jury to say whether, in the exercise of reasonable care, any warning was required.

It is a well known fact that the place where railroad

tracks cross a public highway at grade is dangerous, and this fact is not alone open to a traveler on such highway, but to those who operate the trains as well, and each is chargeable with due care with respect to the rights of the other. The company operating its trains over such crossing must give timely warning of the approach of its locomotive and cars, so that travelers on the highway, intending to cross, may, by the exercise of ordinary care, avoid a collision with its trains. That appellee was a traveler on the highway, is not questioned. It being the duty of appellant to signal highway travelers of its approaching trains, and appellee being within that class, it owed him the duty to give warning of the approaching train. The language of this instruction is not subject to the inferences and construction appellant would have us place on it. *Pittsburgh, etc., R. Co.* v. *Terrell* (1912), 177 Ind. 447, 95 N. E. 1109; *Lake Shore, etc., R. Co.* v. *Brown* (1908), 41 Ind. App. 435, 84 N. E. 25; *Pittsburgh, etc., R. Co.* v. *Lynch* (1909), 43 Ind. App. 177, 87 N. E. 40; *Indianapolis, etc., R. Co.* v. *McLin* (1882), 82 Ind. 435; *Cleveland, etc., R. Co.* v. *Miles* (1904), 162 Ind. 646, 70 N. E. 985; *Cleveland, etc., R. Co.* v. *Carey* (1904), 33 Ind. App. 275, 71 N. E. 244.

Instruction 4, in substance, informed the jury that if it believed from the evidence that the whistle on appellant's locomotive was sounded a half or three-quarters of a mile north of Cass street, as a station signal, and was not sufficient to warn appellee, who, in the exercise of due care, was approaching the crossing, and that no other signal or warning, in the way of sounding the whistle or ringing the bell, was given, appellant's duty in that regard would not be fully discharged so as to relieve it from all liability further to sound the whistle or to give warning or to put the train under control, or in some manner further protect appellee if he was about to use the crossing lawfully while exercising due care.

There is no claim that appellant used any means to warn

travelers approaching and intending to pass over said crossing, other than by sounding the whistle or ringing the bell on its locomotives, or that on the occasion of the accident appellee was in any other manner warned of the approaching train. Therefore, if the whistle was not sounded, other than the whistle for the station, or the bell rung, and they were insufficient to warn travelers at Cass street, then it might be said as a matter of law that appellant had not fully discharged the duty which it owed to such travelers. This instruction was limited to the duty of appellant to give some reasonable warning of the particular train's approach to the particular crossing, and in that regard it was not misleading by the use of the words "sufficient to warn plaintiff", or because it did not go further and make appellant's liability to appellee for injuries sustained by him depend on such neglect as the proximate cause thereof. For when this instruction is read in connection with other instructions, the law applicable to the cause was clearly presented to the jury, leaving no ground for appellant's objection.

Instruction five told the jury that it was the duty of appellant to give reasonable and timely warning of the approach of such locomotive and cars to said street crossing, and a failure on its part to perform that duty would render it liable for damages caused thereby. This instruction is challenged, for the reasons stated in support of the objections urged against instruction three and one-half, and for the reasons given in support of that instruction this one was not erroneous.

9.

The substance of instruction six was that appellant had the right to occupy Cass street with its tracks, and to run its locomotives and cars over them, but that this right was not exclusive, and that the running of its locomotives and cars at a high rate of speed over the crossing, without giving reasonable notice and warning of their approach, by ringing a bell or sounding a whistle, would make appellant liable to appellee if injured without

11.

any fault or contributory negligence on his part, while lawfully using said street and crossing.

Technically this instruction is incorrect, for failing unmistakably to connect the stated omissions with the injury; but taking the instruction as a whole, we are convinced that no reasonable person could have understood from the language used that the court had reference to any injuries sustained by appellee, other than those proximately caused by appellant's act in running its locomotive and cars at a high rate of speed, and its omission to ring the bell or sound the whistle. The error was therefore harmless.

Instruction twenty was properly refused, on the ground that it narrated a number of facts from which the jury might infer that appellee did not stop and listen at a stated point, which was opposite the box-car standing on the siding. It is not claimed that he did stop at this point. At that time he was driving at a slow walk, and had he stopped at the point fixed in the instruction, his horses' heads would have been within about one foot of the main track. As there was no claim that appellee stopped at the point fixed by this instruction, it was properly refused, for the further reason that it was not within the evidence, and the giving of it would have tended to confuse rather than to enlighten the jury. Whether appellee acted as a prudent and careful person in not stopping and listening at a point opposite said box-car, was submitted to the jury, and it was for it to say whether appellee exercised due care in not stopping.

No error intervened by the giving of instruction one.

It is also insisted that the verdict is not sustained by sufficient evidence, because the evidence shows that appellee was not free from fault. This insistence cannot be sustained, for after a careful examination of the evidence, we cannot say that any essential fact to sustain the verdict or judgment is without legal evidence to support it.

Over appellant's objection, one witness was allowed to testify as to where the train was when it whistled, and to give his opinion as to the speed of the train; another witness, to testify at what distance he could, at the time, have heard the whistle had it sounded, and that on the occasion of this accident he did not hear either the whistle or the bell. Another witness, the engineer on the locomotive which collided with appellee's carriage, testified as to the average speed between stations from Tipton, south, when under full speed, and as to the speed of the train when it crossed the bridge north of Cicero, and another witness testified that there was no flagman, watchman or gate at the crossing. The witnesses who testified as to where the train was when it whistled, and as to the speed of the train, resided near the railroad, were familiar with the surroundings, with the running of the trains in that locality, and had frequently heard the sound of the whistle and bell. There was no error in admitting this testimony. *Louisville, etc., R. Co.* v. *Hendricks* (1891), 128 Ind. 462, 28 N. E. 58; *Louisville, etc., R. Co.* v. *Jones* (1886), 108 Ind. 551, 9 N. E. 476; *Guggenheim* v. *Lake Shore, etc., R. Co.* (1887), 66 Mich. 150.

The engineer who testified as to the speed of the train at the points mentioned, did so on cross-examination. On his original examination he had testified as to the speed of the train at the time he approached the crossing. The evidence was properly admitted as affecting the weight to be given his testimony. The testimony admitted, regarding the flagman, watchman and gate at the crossing, if improper, was rendered harmless by an instruction which the court gave, to the effect that there was no ordinance of the town requiring appellant to maintain a flagman, watchman or gate, and for that reason appellant was not liable for any failure in that respect.

Judgment affirmed.

Note.—Reported in 97 N. E. 203. See, also, under (1) 33 Cyc. 1070; (2, 3) 33 Cyc. 1142; (4) 33 Cyc. 1010; (5) 33 Cyc. 1110;

(6) 33 Cyc. 1000; (7) 38 Cyc. 1809; (8) 33 Cyc. 956; (9) 33 Cyc. 1137; (11) 38 Cyc. 1809; (12) 38 Cyc. 1602, 1612; (13) 3 Cyc. 349; (14) 33 Cyc. 1082, 1084; (15) 40 Cyc. 2480; (16) 38 Cyc. 1444. As to the duties resting on persons approaching a railroad track, see 20 Am. St. 452. On the question of failure to give customary signals as excusing nonperformance of duty to look and listen, see 3 L. R. A. (N. S.) 391. Upon the duty of a traveler approaching railway crossing as to place and direction of observation, see 37 L. R. A. (N. S.) 136. The question of the duty to give crossing signals for the benefit of persons near a crossing, but who are not about to use the same is treated in 14 L. R. A. (N. S.) 998; 31 L. R. A. (N. S.) 667. As to evidence as to speed of trains and hand cars, see 34 L. R. A. (N. S.) 790.