## CHICAGO AND ERIE RAILROAD COMPANY *v.* BIDDINGER.

### [No. 9,122. Filed October 25, 1916.]

1. ACTIONS.—*Predicating Action on a Statute.*—Where one predicates his cause of action on a statute, he must bring himself within it. p. 38.

2. RAILROADS.—*Crossing Accidents.—Complaint.—Allegations.—Inferences.—Sufficiency.*—In an action for personal injuries sustained in a railroad crossing accident, allegations in the complaint that defendant negligently ran its train against plaintiff while running at the high and dangerous speed of fifty miles per hour, and that the engine crew carelessly and negligently failed

to sound the whistle or ring the bell of the locomotive on approaching the crossing when within 100 rods thereof, until about 150 feet therefrom, sufficiently showed, aided by reasonable inference permitted in favor of a pleading, that the train which injured plaintiff approached from a point not less than 100 rods from the crossing, and that from such point the whistle was not blown until the train was about 150 feet from the crossing, and such averments were sufficient to charge defendant with negligence in failing to give the signals required of trains by statute when approaching highway crossings. p. 38.

3. RAILROADS.—*Crossing Accidents.—Negligence.—Failure to Give Statutory Signals.*—The failure of a railroad company to ring the bell on the engine continuously as a train approaches a street crossing, being in itself a violation of the statute, constitutes negligence. p. 39.

4. RAILROADS.—*Crossing Accidents.—Failure to Give Signals.*—Independent of statute, it is the duty of those in charge of a railroad train to give reasonable and timely warning of its approach to a highway crossing, and failure to do so constitutes negligence. p. 39.

5. RAILROADS.—*Operation.—Speed.—Crossing Watchman.—Negligence.*—While running a train over a crossing at a high rate of speed, or failure to have a flagman or watchman stationed at the crossing, is not negligence *per se*, in the absence of a statute making it so, yet such operation of a train may, in fact, constitute negligence depending upon all the facts and circumstances surrounding the particular case under consideration. p. 39.

6. RAILROADS.—*Crossing Accidents.—Speed.—Negligence.—Care Required.*—The rule permitting a train to be run in the country at a high rate of speed without the imputation of negligence does not obtain as to trains when operated through populous cities and over the much-traveled crossings therein, but the railroad owes to those traveling over such crossings the duty of ordinary care. p. 39.

7. NEGLIGENCE.—*Complaint.—Necessary Averments.—Sufficiency.*—Where the duty to use ordinary care is shown by the complaint, the general averment therein that defendant carelessly and negligently did, or omitted to do, the acts necessary to the discharge of such duty, and that such negligent acts were the proximate cause of the injury complained of, renders the complaint sufficient as against a demurrer, unless the specific acts pleaded are of a character to destroy the force and effect of such general charge of negligence. p. 40.

8. RAILROADS.—*Crossing Accidents.—Complaint.—Construction.*—In an action for personal injuries sustained in a railroad crossing accident, the specific averment in the complaint that the train which injured plaintiff was running at the high and dangerous

speed of fifty miles an hour, when considered in the light of averments showing that the crossing where the accident occurred was in a city where vehicles were passing over it every two minutes, did not tend to destroy the effect of a general charge of negligent speed. p. 40.

9. RAILROADS.— *Crossing Accidents.* —*Complaint.*— *Construction.*— In an action for injuries sustained in a railroad crossing accident, an averment in the complaint as to the frequency of travel at the crossing strengthens the averment that defendant negligently and carelessly failed to maintain a watchman at such crossing. p. 41.

10. RAILROADS.—*Crossing Accidents.*—*Complaint.*—*Construction.*— Averments in a complaint alleging that defendant railroad was operating a line of railway through a county named and was doing business therein; that Main street, or the Michigan road, which it crossed, is the principal street of the city of Rochester, and very much used by the public at the point where it crosses defendant's railway, are sufficient to show, aided by reasonable inference permitted in favor of a pleading, that the crossing referred to was located within the city of Rochester, and that the railroad was therefore subject to its ordinances. p. 41.

11. APPEAL.— *Review.*— *Issues.*— *Amendments Deemed Made.*— In an action against a railroad for injuries sustained by plaintiff when struck by a train at a street crossing, even though the averments of the second paragraph of complaint were insufficient to show that the crossing was within the corporate limits of the city of Rochester, and that the railroad was, therefore, subject to its ordinances, where the issue as to the location of such crossing was fully tried and proof thereon made under the first paragraph of complaint, the second paragraph, being in all other respects sufficient as against demurrer will be treated on appeal as having been amended in respect to such defect to conform to the proof. p. 42.

12. RAILROADS.—*Crossing Accidents.*—*Complaint.*—*Construction.*— In an action for personal injuries sustained in a railroad crossing accident, while averments in the complaint charging that plaintiff's view of the crossing was obstructed by buildings, etc., as he approached riding in a top buggy with the side curtains down, and that on account of obstructions he could not see or hear any train approaching, may tend to show, when standing alone, that plaintiff was guilty of contributory negligence in going upon the crossing, yet such averments, read in connection with others in the complaint alleging that when he approached the crossing he proceeded carefully and exercised all due care and caution to see and hear any train, may be fairly interpreted as meaning that plaintiff used all care and caution usually exercised by a man of ordinary care and prudence to see and hear an

approaching train, and that he could not, and did not, see the train. pp. 42, 43.

13. NEGLIGENCE.— *Complaint.*— *Disclosure of Defense.*— *Contributory Negligence.*—Contributory negligence is a defense, and, while it may appear from the complaint, when it does, it is the duty of the court to hold the complaint insufficient as against a demurrer predicated on such ground, yet the court can do this only when it can say, as a matter of law, that under the facts pleaded, honest and reasonable men could draw but one inference therefrom—that the plaintiff's conduct was not that of a man of ordinary care and prudence. p. 42.

14. RAILROADS.—*Crossing Accidents.*—*Duty of Traveler Approaching Crossing.*—*Pleading.*—The law requires persons traveling on the streets of a city in a vehicle, and approaching a railroad crossing, to stop before passing over a crossing only in those cases where ordinary prudence would dictate such a course, and it is only in exceptional cases that the court can say that the facts pleaded affirmatively show the necessity for such action. p. 43.

15. APPEAL.— *Review.*— *Verdict.*— *Answers to Interrogatories.*— *Presumptions.*—A general verdict for the plaintiff is a finding that every averment of the complaint essential to his cause of action is true, and to support the verdict against a motion for judgment on the answers to interrogatories, the court on appeal must assume as proven every fact provable under any supposable evidence admissible under the issues which in any way tends to support the general verdict, or which tends to reconcile it with the answers to interrogatories. p. 44.

16. RAILROADS.—*Crossing Accidents.*—*Answers to Interrogatories.* —*Construction.*—In an action against a railroad for injuries sustained in a collision at a street crossing, a finding by the jury, in answer to an interrogatory, that obstructions along and immediately east of the street, the side curtains on plaintiff's buggy and the noise from the steel tires on the buggy did not prevent him from hearing the train approaching as he traveled from a distance 200 feet south of defendant's main track toward the crossing, is not in irreconcilable conflict with a general verdict for plaintiff, since it does not mean that he heard, or could have heard, the train within the distance mentioned, but means, fairly interpreted, that the things mentioned in the interrogatory did not prevent plaintiff from hearing the train, and not that he may not have been prevented from hearing it by something else, or that he in fact heard it. p. 44.

17. RAILROADS.—*Crossing Accidents.*—*Answers to Interrogatories.* —*Construction.*—In an action for injuries in a railroad crossing accident, the jury's finding, in answer to interrogatories, that

with a box car standing east of the crossing on the elevator track, which was about twenty-one feet south of the main track, plaintiff could have heard the approach of the train which struck him without stopping his horse, and could have heard the approach of the train before he crossed such elevator track if he had stopped and listened, is not in irreconcilable conflict with the general verdict, which is a finding that plaintiff used ordinary care and that he did not hear the train, since the answer of the jury, under the interpretation most favorable to defendant, will be construed as meaning that plaintiff could have heard the approaching train either by stopping his horse and listening, or without stopping his horse, which is not the equivalent of a finding that he did hear such train, or that by the use of ordinary care he could have heard it. p. 45.

18. RAILROADS.—*Crossing Accidents.—Review.—Answers to Interrogatories.*—In an action for personal injuries sustained in a collision with defendant's train at a crossing, where the facts elicited by the jury's answers to interrogatories do not show that plaintiff failed to use ordinary care to ascertain the approach of the train before proceeding upon the crossing, or that obstructions or noises other than those mentioned in the interrogatories may not have made it difficult or impossible to hear the approach of the train except by the use of extraordinary care, such facts will not invoke the application of the principle that the law will presume, generally, that a person actually saw what he could have seen if he had looked, and heard what he could have heard if he had listened, such presumption being indulged only in cases where one fails to look or listen, or where the physical surroundings and conditions are such as to force conviction that one did see or hear, notwithstanding a statement or finding that he did not. p. 45.

19. APPEAL.— *Review.— Presumptions.— Verdict.— Answers to Interrogatories.*—In an action for personal injuries in a railroad crossing accident where the general verdict was for the plaintiff, it will be assumed on appeal, on consideration of the refusal of a motion for judgment on the answers to interrogatories, that the evidence showed that there was something to prevent the plaintiff from hearing the approach of the train at the time inquired about in the interrogatories, in the absence of a contrary finding. p. 46.

20. APPEAL.— *Briefs.— Points and Authorities.— Abstract Statements.—Instructions.*—Where appellant's brief, under its points and authorities, makes general statements concerning what is proper and required in giving the instructions, but under such heading makes no application of any of these statements nor reference to any particular instruction, the brief does not comply

with the rules of the Appellate Court, and no question on the instructions is presented for review. p. 46.

21. APPEAL.—*Briefs.*—*Presenting Grounds for Review.*—*Instructions.*—No question is presented for review by criticism of certain instructions made in the argument in appellant's brief, where the rule of the Appellate Court relating to the presentation of alleged error under the heading of points and authorities has not been complied with. p. 47.

22. APPEAL.—*Waiver of Error.*—*Briefs.*—A ground for a motion for a new trial not referred to under the heading of points and authorities in appellant's brief is waived. p. 47.

23. EVIDENCE.—*Testimony of Physician.*—*Personal Injuries.*—*Examination.*—In an action for personal injuries, a physician, called to examine plaintiff to ascertain the extent of his injuries, but not to treat him, could testify as to what he saw and found in such examination. p. 48.

24. EVIDENCE.—*Self-Serving Declarations.*—*Physician's Examination.*—*Personal Injury.*—In an action for personal injuries, the testimony of a physician that he found, when examining the plaintiff to ascertain his injuries, a "slight soreness in the intercostal region," was not objectionable as being a self-serving declaration, where such statement did not purport to be what the plaintiff told the witness, but was based on what the witness found in his examination. p. 48.

From Miami Circuit Court; *Joseph N. Tillett*, Judge.

Action by Err Biddinger against the Chicago and Erie Railroad Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*W. O. Johnson, Bull & Johnson* and *Antrim & McClintic,* for appellant.

*Arthur Metzler,* for appellee.

HOTTEL, P. J.—This is an appeal from a judgment in appellee's favor in an action brought by him against appellant for damages alleged to have resulted from injuries received while attempting to cross appellant's railroad tracks at a public street crossing in the city of Rochester, Indiana. The complaint was in two paragraphs, each of which was challenged by a demurrer. This demurrer was overruled and exceptions were properly saved. The only answer was a general denial. There was a trial by jury

and interrogatories submitted to it for answer. Upon the return of a general verdict for appellee with the answers to interrogatories, appellant moved for judgment on such answers, which motion was overruled and exceptions were properly saved. These several rulings of the trial court are assigned as error and relied on for reversal. The only objections to each paragraph of the complaint stated in the respective memoranda filed with the demurrers thereto are the same, viz.: (1) That no negligence on the part of appellant is disclosed; (2) that it is disclosed ''by fair inference from the alleged facts as pleaded that the plaintiff was guilty of negligence.''

The substance of that part of the complaint necessary to an understanding of said objection thereto, and our disposition thereof, is as follows: Appellant's railroad passes through the city of Rochester, Indiana, in an easterly and westerly direction and crosses almost at right angles with the main street in said city, which is the continuation through said city of the highway known as the Michigan road. Such street or road is the principal street of Rochester and is much used by the public at the point where it crosses appellant's railroad. On April 1, 1911, when appellee was injured, there were located on the west side of said street and south of and near the crossing a large number of dwelling houses and lumber sheds, and on the east side of the street and the south side of the railroad, and near thereto, there were located a number of dwelling houses, piles of tile, forest trees, an elevator, and freight cars standing on the switch south of appellant's main track. On account of these obstructions, appellee could not and did not see or hear any train or engine approaching from the east at the time he was injured as hereinafter set out. On April 1, 1911, appellee was in a buggy driving north on said street, intending to pass over said crossing, and ''*as he approached and entered near and to said crossing he proceeded carefully and exercised all due care and caution to hear and see*

*any train, engine or locomotive that might be approaching said crossing either from the east or the west;* and as plaintiff was about to pass over said crossing at the intersection of said railway and main street appellant *carelessly and negligently ran its engine and train of cars on and against plaintiff* and his horse and buggy with great force and violence, *which engine and train of cars were carelessly and negligently run at a high and dangerous rate of speed, to wit, about fifty miles an hour'';* that ''said defendant and its servants, who were then operating said engine and train of cars and controlling the same, *carelessly and negligently failed and omitted to sound the whistle, or ring the bell on said locomotive and train so approaching said crossing,* when the same was within one hundred rods from said crossing until about one hundred fifty feet therefrom, and at that moment for the first time, a whistle on said locomotive was sounded and from the time said train first came into view, and the time it struck plaintiff there was not sufficient time by any human effort to escape, and plaintiff says further that the defendant *carelessly and negligently failed and omitted to maintain a watchman, flagman, person or gate at said crossing* to notify plaintiff of the approach of said engine and train of cars, notwithstanding that on said day and previous thereto, said crossing was much used by the public, as many as one or more vehicles passing over the same in the interval of every two minutes, as well as many pedestrians crossing the same;   *   *   *   that *solely by and through the negligence of the defendant, as aforesaid,* said engine and train of cars then and there ran with great force and violence upon and against the plaintiff and said buggy, and the plaintiff was then and there and thereby thrown with great force and violence from and out of said buggy, and was thereby injured   *   *   *.''   (Our italics.)

The second paragraph, except as hereinafter indicated, is substantially the same as the first and contains additional averments to the effect that the city of Rochester, on the day

in question, had in force an ordinance, duly passed by the common council, which provided as follows:

"Section 133. No person shall run a locomotive or steam railway car faster than twenty-five miles an hour within the limits of the City of Rochester.

"Section 134. Any person violating section 133 of this ordinance shall, upon conviction thereof, be fined in any sum not exceeding $100."

In support of its first objection, *supra*, to the first paragraph of the complaint, appellant insists that it is not alleged that appellant's train approached from a point eighty rods or more from the crossing where appellee was injured, and hence, that the duty to give the signals required by statute is not shown; *that when one predicates his cause of action on a statute, he must bring himself within it.* That the italicized words, *supra*, announce a correct legal proposition may be conceded, but its applicability in this case depends on the correctness of appellant's assumption that the sufficiency of this paragraph of complaint rests alone upon the sufficiency of a charge of the violation of the statute requiring signals, and the further assumption that the averments here under consideration do not show that appellant's train approached from a point more than eighty rods from the crossing. This paragraph of complaint in fact charges several acts, any of which, if sufficiently charged, would make it good against demurrer. If, however, such other acts of negligence be entirely disregarded, the averments relating to the failure to give the said statutory signals, are sufficient in and of themselves to show that appellant was guilty of negligence: (1) Because they show, at least by *reasonable inference*, that the train which injured appellee approached from a point not less than 100 rods east thereof, and that from such point the whistle on said train was not blown until the train was about 150 feet from said crossing. We are of the opinion that said averments measure up to the requirements of the cases holding that only necessary in-

ferences can be indulged in favor of a pleading, but in any event they are sufficient under the more recent holdings which permit reasonable inferences to be drawn in favor of a pleading. *Domestic Block Coal Co.* v. *DeArmey* (1913); 179 Ind. 592, 100 N. E. 675, 102 N. E. 99. (2) Said averments expressly show that the bell on such train was not rung continuously as it approached the crossing, which omission was in itself a violation of the statute, and hence negligence, and, independent of the statute, "it is the duty of those in charge of a railroad train to give reasonable and timely warning of its approach to a highway crossing." *Pittsburgh, etc., R. Co.* v. *Terrell* (1911), 177 Ind. 447, 456, 95 N. E. 1109, 1113, 42 L. R. A. (N. S.) 367. What we have said disposes of appellant's first objection, *supra,* to each paragraph of the complaint. However, it is urged against the averments attempting to charge negligence on account of the speed of the train and the failure to provide a flagman, that these averments are not sufficient because there is no averment that there was any legislative or municipal requirement, either limiting the speed of trains, or providing for a gate or flagman at the crossing where appellee was injured, and, that, in the absence of such requirements, neither the running of the train at high speed over the crossing nor the failure to provide a gate or flagman thereat is negligence *per se.*

The legal proposition involved in appellant's contention is substantially correct, but while the running of a train over a crossing at high speed or without any flagman or watchman stationed at the crossing is not negligence *per se,* in the absence of a statute making it so, yet such operation of a train may, in fact, constitute negligence, depending upon all the facts and circumstances surrounding the particular case. *Wabash R. Co.* v. *McNown* (1912), 53 Ind. App. 116, 123, 99 N. E. 126, 100 N. E. 383, and cases there cited. The rules as to operation of trains in city and country are different. The rule

which generally obtains, permitting a train to be run in the country at a high speed without the imputation of negligence, does not obtain as to trains when operated through populous cities and over the much-traveled crossings therein. *Cleveland, etc., R. Co.* v. *Lynn* (1908), 171 Ind. 589, 598, 85 N. E. 999, 86 N. E. 1017; *Pittsburgh, etc., R. Co.* v. *Lynch* (1908), 43 Ind. App. 177, 180-182, 87 N. E. 40; *Wabash R. Co.* v. *McNown, supra,* 123.

The averments above indicated, show that appellee was a traveler on said street attempting to cross appellant's tracks, and hence show that appellant owed to appellee the duty of ordinary care. They also show that it failed to discharge that duty by *carelessly* and *negligently* running its train *"at a high and dangerous rate of speed, to wit, about 50 miles an hour"*; that *"it carelessly and negligently* failed and omitted to maintain a watchman, flagman, person or gate at said crossing"; that said crossing *"was much used by the public, as many as one or more vehicles passing over the same * * * every two minutes, as well as many pedestrians crossing the same."* Where the duty to use

7. ordinary care is shown, the *general averment* that appellant *carelessly and negligently did or omitted to do* the acts necessary to the discharge of such duty, and that such negligent acts were the proximate cause of the injury complained of, render the complaint sufficient as against a demurrer, unless the specific acts pleaded are of a character to destroy the force and effect of such general charge of negligence. *Tippecanoe Loan, etc., Co.* v. *Cleveland, etc., R. Co.* (1914), 57 Ind. App. 644, 656, 657, 104 N. E. 866, 106 N. E. 739, and cases there cited; *Cleveland, etc., R. Co.* v. *Clark* (1912), 51 Ind. App. 392, 404, 405, 97 N. E. 822; *New York, etc., R. Co.* v. *Lind* (1913), 180 Ind. 38, 44, 45, 102 N. E. 449. We do not think it can be seriously

8. contended that the specific averments that follow the general charge of negligent speed, viz., that it was at a high and dangerous rate, to wit, fifty miles an hour,

when considered in the light of the averments showing that such crossing was in a city where vehicles were passing over it every two minutes, even tend to overthrow such general averment. The averment as to the frequency of

9. the travel at the crossing also strengthens the averment that the appellant *negligently and carelessly* failed to maintain a watchman, etc. Judged by any or all of the authorities, each of said paragraphs of complaint contains facts sufficient to show actionable negligence on the part of appellant in each of the respects indicated.

In connection with this ground of the demurrer to the second paragraph, appellant suggests an additional objection, which, on account of its influence on other questions presented by the appeal, will be here considered. It is insisted by appellant that the charge of negligence in this paragraph, which is predicated on the violation of the ordinance above set out, is insufficient because of the absence of averments showing that appellant's railroad was located within the city of Rochester; and hence, that there was nothing to show that the council of the city of Rochester had jurisdiction over appellant, or that such council could enact "a valid ordinance regulating the operation of appellant's locomotive or cars within the corporate limits of said city."

The second paragraph, as affecting the question raised by appellant's objection, contains averments as follows, to wit:

That appellant was operating a line of railway in and

10. through Fulton county, Indiana, and doing business as such railroad company, among other countries, in said county of Fulton and State aforesaid; "that said *Main street,* or *Michigan road,* is the principal street of the city of Rochester, and very much used by the public, especially at the point where the same crosses defendant's railway. While these averments may not necessitate the inference that said crossing was within the city limits of the city of Rochester, we think such fact may be reasonably inferred there-

from, and hence meet the requirements of the later decisions of the Supreme Court. *Domestic Block Coal Co.* v. *De-Armey, supra.*

Assuming, however, without deciding, that such averments are not sufficient to show that the crossing in question was within the limits of the city of Rochester, the fact 11. remains that such second paragraph is, in any event for reasons already indicated, sufficient against demurrer and, as affecting any other question suggested by appellant, this court may and will treat said paragraph as amended in the respect indicated to conform to the proof, such issue having been fully tried and proof thereon made under the first paragraph. *Chicago, etc., R. Co.* v. *Gorman* (1914), 58 Ind. App. 381, 106 N. E. 897, and cases there cited.

In support of its second objection to said paragraphs of complaint, appellant insists, in effect, that because of the averments therein showing the obstruction of appel-12. lee's view as he approached the crossing; that he was riding in a top buggy with the side curtains down; that "on account of * * * obstructions appellee *could not* * * * *see* or *hear* any train or engine approaching from the east on the day and time that he was injured," nothing short of stopping could relieve appellee from being guilty of negligence, and that, because of the absence of such averment, the court should have held that under the facts pleaded, appellee was guilty of contributory negligence. There is no doubt that some of the averments above indicated, especially when separated from those in connection with which they are pleaded, tend to show that appellee was guilty of contributory negligence. It must be remembered, however, that contributory negligence is 13. a defense, and, while it is true, as appellant contends, that such negligence may appear from the complaint, and when it does so appear it is the duty of the court to hold the complaint insufficient as against a demurrer predicated

on such ground, yet the court can do this only when it can say, as a matter of law, that under the facts pleaded, honest and reasonable men could draw but one inference therefrom, viz., that the plaintiff's conduct was not that of a man of ordinary care and prudence. *Cleveland, etc., R. Co.* v. *Clark, supra,* 412, 413; *Cole* v. *Searfoss* (1911), 49 Ind. App. 334, 338-340, 97 N. E. 345; *Wabash R. Co.* v. *McNown, supra,* 135.

The averments, *supra,* upon which appellant relies must be read in connection with and in the light of those which follow them which charge that appellee, when he 12. approached and entered near the crossing, proceeded carefully and exercised all due care and caution to see and hear any train. When these averments are so read, we think that a fair interpretation of their meaning is that appellee in approaching said crossing used all due care and caution; that is to say, all care and caution usually used by a man of ordinary care and prudence to see and hear an approaching train, and that by the use of such care he could not, and did not, see such train. The law requires persons traveling on the streets of a city in a vehicle 14. and approaching a railroad crossing to stop before passing over the crossing only in those cases where ordinary prudence would dictate such a course, and it is only in exceptional cases that the court can say that the facts pleaded affirmatively show the necessity for such action. *Lake Erie, etc., R. Co.* v. *Moore* (1912), 51 Ind. App. 110, 117, 97 N. E. 203; *Cleveland, etc., R. Co.* v. *Lynn* (1911), 177 Ind. 311, 322, 95 N. E. 577, 98 N. E. 67; *Pennsylvania Co.* v. *Horton* (1892), 132 Ind. 189, 194, 31 N. E. 45.

The particular interrogatories and answers thereto on which appellant predicates its contention that its motion for judgment on the answers to interrogatories should have been sustained are as follows: "Interrogatory No. 2. At the point near where said main track crosses Main street in

said city of Rochester, was there a spur track, also called the elevator track, running parallel with said main track and 21½ feet south of said main track? Answer. Yes.

"Interrogatory No. 20. Did plaintiff see or hear said train No. 9 approaching from the east before he reached the elevator track? Answer. No.

"Interrogatory No. 23. Did the obstructions along and immediately east of Main street, the side curtains on plaintiff's buggy and the noise from the steel tires on his buggy passing over said brick pavement prevent him from hearing said train No. 9 approaching from the east while he traveled from a distance two hundred feet south from the center of defendant's main track until he reached the elevator track? Answer. No.

"Interrogatory No. 39. With a box car standing on the elevator track east of the crossing, could plaintiff have heard the approach of said train without stopping his horse? Answer. Yes.

"Interrogatory No. 40. With a box car standing on the elevator track east of the crossing could plaintiff have heard the approach of said train before he crossed the elevator track if he had stopped and listened? Answer. Yes."

What we have just said in our discussion of appellant's second objection to each paragraph of the complaint, is applicable to this question. The general verdict is a 15. finding that every averment of the complaint essential to appellee's cause of action is true, and to support such verdict against the attack under consideration, the court must assume as proven every fact provable under any supposable evidence admissible under the issues which in any way tends to support such general verdict, or which tends to reconcile it with the answers to interrogatories.

Appellant apparently attaches a meaning and importance to interrogatory No. 23 which we cannot give it. It is our duty to so interpret it as to reconcile it with the 16. general verdict, if its words will permit such inter-

pretation. As we interpret the answer to said interrogatory, it does not mean that appellee heard or that he could have heard said approaching train from a point 200 feet south of the center of appellant's main track. On the contrary, a fair and reasonable interpretation of such answer, and one in no way in conflict with the general verdict, is simply that the things *mentioned in the interrogatory* did not prevent appellee from hearing, etc. This does not necessarily mean that something else may not have prevented him from hearing the train, or that he in fact heard it. Neither do we attach to interrogatories Nos. 39 and 40 the importance which appellant gives to them. In the first place, the interrogatories are in a sense misleading, especially when read together. The jury may have meant by their answers thereto simply that the presence of the box car on the elevator track would have had nothing to do with appellee's hearing the train either if he had or had not stopped his horse, but giving to appellant the most favorable interpretation to which the answers are susceptible, they mean that appellant *could* have heard the approaching train, either by stopping his horse and listening, or without stopping his horse. This is not a finding, nor is it the equivalent of a finding that he did hear such train, or that by the use of *ordinary care only* he could have heard such train. On the contrary, the general verdict is a finding that he did use ordinary care, and that he did not hear said train. It is not at all inconsistent to say that a thing *could be seen or heard* which one who used only ordinary care failed to see or hear. The use of ordinary care to see and hear will ordinarily reveal the things which are likely to be seen, but will not ordinarily reveal those things which it is possible to see or hear only by the exercise of extraordinary care or effort to see and hear. It is true, as appellant contends, that, generally speaking, the law will presume that a person actually saw what he could have seen if he had looked, and heard what he could have heard if he

had listened, but this presumption is indulged in cases where one fails to look or listen, and in cases where the physical surroundings and conditions are such as to force conviction that one did see or hear, notwithstanding a statement or finding that he did not. *Cones, Admr.,* v. *Cincinnati, etc., R. Co.* (1888), 114 Ind. 328, 16 N. E. 638; *Lake Erie, etc., R. Co.* v. *Stick* (1896), 143 Ind. 449, 41 N. E. 365; *Pittsburgh, etc., R. Co.* v. *Fraze* (1898), 150 Ind. 576, 50 N. E. 576, 65 Am. St. 377; *Malott* v. *Hawkins* (1902), 159 Ind. 127, 63 N. E. 308; *Cleveland, etc., R. Co.* v. *Moore* (1909), 45 Ind. App. 58, 90 N. E. 93; *Cleveland, etc., R. Co.* v. *Pace* (1912), 179 Ind. 415, 101 N. E. 479; *Cleveland, etc., R. Co.* v. *Starks* (1913), 58 Ind. App. 341. The facts elicited by the answers, *supra,* do not invoke the application of this principle because there is no finding that appellee did not use ordinary care, and there is no finding that some obstruction other than the box car on the elevator track or that some noise present at the time appellee approached the crossing may not have interfered with and made the hearing of the approach of such train difficult or impossible except by the use of extraordinary care. The evidence may have shown, and for the purposes of the question under consideration, we must assume that it did show, that there was something to prevent appellee from hearing at the time inquired about in the interrogatories. We conclude, therefore, that no error resulted from the ruling on the motion for judgment on said answers.

Appellant, in its points and authorities, makes some general statements with reference to what is proper and required in the giving of instructions, but under such heading no application is made of any of these statements to any particular instruction, nor is there any mention of, or reference to, any particular instruction. This is not a compliance with the rules of the court, and hence no question is presented on the instructions. *German Fire Ins. Co.* v. *Zonker* (1914), 57 Ind. App. 696, 701, 703, 108 N. E.

160; *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1906), 168 Ind. 438, 460, 78 N. E. 1033; *Chicago, etc., R. Co.* v. *Dinius* (1913), 180 Ind. 596, 626, 627, 103 N. E. 652; *Kaufman* v. *Alexander* (1913), 180 Ind. 670, 671, 103 N. E. 481; *Weidenhammer* v. *State* (1913), 181 Ind. 349, 350, 103 N. E. 413, 104 N. E. 577; *Bray* v. *Tardy* (1914), 182 Ind. 98, 105 N. E. 772.

In its *argument,* appellant challenges and criticizes particular instructions, but this does not meet the requirements of said rule. *Leach* v. *State* (1912), 177 Ind. 234, 239, 97 N. E. 792. We might say, however, that in our discussion of the several grounds of the objections to the complaint, we, in effect, dispose of most of said criticisms and objections. Of twenty-five instructions tendered by appellant, all but four were given, and the instructions are as favorable to it as the law would warrant.

The first, second, third and fourth grounds of appellant's motion for new trial are predicated on alleged errors in the admission of evidence. For convenience, we take up these grounds in their reverse order.

The fourth ground is not referred to in appellant's points and authorities, and hence is waived.

Dr. Homer C. Haas was asked the following question: "Now state to the Court and jury what you discovered with reference to the conditions of his body," to which he answered: "I found that there is a slight enlargement of the ninth rib on the left side *with slight soreness in the inter-costal region.*" This question was objected to on the ground that the evidence was incompetent because the examination was made for the purpose of testifying at the trial. Appellant also objected to and moved to strike out the italicized portion of the answer, *supra,* on the ground that "it is a self-serving declaration on the part of the plaintiff." The second and third grounds of the motion for new trial, as set out in appellant's brief, are respectively based on the court's action in overruling the objection to

Chicago, etc., R. Co. *v.* Biddinger—63 Ind. App. 30.

said question and its motion to strike out the part of the answer indicated.

As preliminary to its objection, appellant developed, by questions put to and answered by the witness, that the examination of appellee made by the witness was made the night before the trial and not for the purpose of treating appellee. It is so well settled in this State that a physician may testify to what he saw and found as a result of such an examination that citation of authorities is unnecessary. The part of the answer which the appellant sought to strike out did not purport to be what the appellee told the witness, but is a statement of what the witness found from his examination, and hence was not subject to appellant's objection.

The first ground of appellant's motion for new trial is predicated on the action of the trial court in overruling appellant's objection to a similar question put to another doctor, the objection being the same as that made to the question, *supra,* put to Dr. Haas, and, hence, for the same reason does not present error.

Appellant also challenges the verdict of the jury on the ground that it is not sustained by sufficient evidence, but our examination of the record convinces us that there was evidence at least tending to support all of the elements of the complaint essential to appellee's cause of action.

Finding no error in the record, the judgment below is affirmed.

NOTE.—Reported in 113 N. E. 1027. Violation of rule as to the giving of signals as evidence of negligence, note, 8 L. R. A. (N. S.) 1063. Care required of railroad companies at crossings, 26 Am. Rep. 207. Discussion of the duty of railroad companies to maintain flagmen at crossings, in the absence of statute, 4 Ann. Cas. 294; 17 Ann. Cas. 982. See under (2) 33 Cyc 1053, 1058; (3) 33 Cyc 968; (4) 33 Cyc 958; (5) 33 Cyc 943, 971; (6) 33 Cyc 974; (7, 10) 29 Cyc 570; 33 Cyc 1054; 33 Cyc 1058; (14) 33 Cyc 1010.